**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 23-CV-22352-SCOLA/GOODMAN**

THE SMILEY COMPANY SPRL.,

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,",

Defendants.
______________________________________/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS**

In this trademark infringement action, Plaintiff The Smiley Company SPRL ("Plaintiff") filed a motion for final default judgment against certain Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" [ECF Nos. 82; 82-1 (collectively, the "Defaulting Defendants")].[1] The Defaulting Defendants

[1] There are 344 Defaulting Defendants. These 344 include Defendant Nos. 1, 3, 6, 7, 9, 10, 12, 14, 16–25, 27, 30, 33-36, 38-40, 42, 43, 45–47, 49–54, 57-59, 61–66, 68, 69, 71–74, 76–81, 83, 84, 86, 87, 89–93, 96–108, 110–14, 116, 117, 119, 120, 123–35, 137–40, 142–55, 157–60, 162–76, 178–82, 184, 185, 187–212, 214–16, 219, 221–24, 226–30, 232–36, 238–40, 242–44, 246–52, 254–67, 269, 270, 272, 275–90, 293, 294, 296, 297, 299, 300, 302–17, 321, 324–26, 328–31, 333, 335–39, 341–46, 348–50, 352, 354–59, 361–65, 367–75, 377–81, 384, 386–88, 390, 391, 394–98, 400–03, 406–10, 413, 414, 416, 418–23, 425–29.

did not file a response to Plaintiff's motion and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 84]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant** the Motion [ECF No. 82].

## I. Background

Plaintiff filed a five-count Complaint alleging trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I), false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), common law unfair competition (Count III), common law trademark infringement (Count IV), and copyright infringement (Count V). [ECF No. 1].

Plaintiff owns multiple trademarks "which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Smiley Marks"). *Id*. at ¶ 25.[2] Plaintiff "is also the owner" of multiple "copyrights registered in the United States

[2] Plaintiff includes a chart within this paragraph listing the eight (8) Smiley Marks with their respective trademark, registration number, registration date, and description of "classes/goods". [ECF No. 1, pp. 8–16].

[ ] (collectively the 'Copyrighted Works')". *Id*. at ¶ 32.[3] Plaintiff contends that it has "all exclusive rights in and to the Copyrighted Works and control[s] all licenses to distribute, perform, and enforce its rights to the Copyrighted Works." *Id*. at ¶ 34.

The Complaint alleges that Defendants "are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Smiley Marks and Copyrighted Works through at least the Internet based e-commerce stores operating under the Seller IDs." *Id*. at ¶ 36. The Complaint further alleges that Defendants have willfully infringed on Plaintiff's intellectual property rights and engaged in unfair competition through the operation of their e-commerce stores:

> 37. Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Smiley Marks and Copyrighted Works despite Defendants' knowledge that they are without authority to use the Smiley Marks and Copyrighted Works. The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.
>
> 38. Defendants advertise their Counterfeit Goods for sale to the consuming

---

[3] Plaintiff includes a chart within this paragraph listing the fifteen (15) Copyrighted Works with their respective registration number, registration date, and title of work. *Id*. at 17–18.

> public via e-commerce stores on Internet marketplace websites using at least the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use one or more of the Smiley Marks and Copyrighted Works without Plaintiff's permission.
>
> 39. As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Smiley Marks and Copyrighted Works. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Smiley Marks and Copyrighted Works in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Thus, upon information, these Defendants are the same person, related persons, or acting in concert with one another such as utilizing the same fraudulent marketing material and/or obtaining the counterfeit product from a common source. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Smiley Marks and Copyrighted Works, and/or (iii) increasing Plaintiff's overall cost to market the Smiley Marks and Copyrighted Works, and educate consumers about their brand via the Internet.

*Id.* at ¶¶ 37–39.

Plaintiff obtained a Clerk's Default [ECF No. 76] and now seeks the entry of a default judgment against the Defaulting Defendants. [ECF No. 82]. In support of the instant motion, Plaintiff submitted the declaration of its counsel, Javier Sobrado [ECF No. 82-4]. Moreover, Plaintiff's Motion repeatedly cites to the sworn declarations of Nicolas Loufrani, Plaintiff's

Chief Executive Officer [ECF No. 7-2] and Richard Guerra, Plaintiff's legal counsel [ECF No. 7-5], to help substantiate its factual allegations.[4]

## II. Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[5] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

---

[4] Plaintiff initially filed these declarations as support for its *Ex Parte* Motion for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF No. 7].

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

## III. Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment

entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

**a. Subject-Matter Jurisdiction**

The Complaint [ECF No. 1] alleges causes of action under the Lanham Act. Therefore, the Court has original subject-matter jurisdiction over the instant action. *See Ethos Grp., Inc. v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097, at *2 (M.D. Fla. May 25, 2023), *report and recommendation adopted*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070 (M.D. Fla. June 26, 2023) ("Because this action arises under the Lanham Act, the Court has original subject-matter jurisdiction." (record citation omitted)). The Court also has supplemental jurisdiction over Plaintiff's common law claims because they "are so related to" Plaintiff's federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

**b. Personal Jurisdiction**

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to

evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

**i. Service of Process**

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a motion seeking authorization for alternate service of process pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court granted. [ECF Nos. 8; 18].

The Court authorized Plaintiff to serve the Defaulting Defendants as follows:

> The Plaintiff is permitted to serve the Summonses, Complaint, and all other filings and discovery in this matter upon each Defendant in this action:

> (a) via e-mail by providing the address for [ ] Plaintiff's designated serving notice website to [ ]Defendants via the e-mail accounts provided by each Defendant as part of the data related to its e-commerce store, including customer service e-mail addresses, onsite contact forms, and private messaging application or services, or via the e-commerce marketplace platform for each of the e-commerce stores; AND
>
> (b) via website posting by posting a copy of the Summonses, Complaint, and all filings and discovery in this matter on [ ] Plaintiff's designated serving notice website appearing at the following URL: https://www.dropbox.com/scl/fo/ftazryndvzffe6xefmbdx/h?dl=0&rlkey=5c3ljw0qeo5yfxfruk1srrsz5.

[ECF No. 18, p. 3].

Plaintiff filed a proof of service indicating that it served the Defaulting Defendants by: (1) posting the necessary copies on the Court-specified website, and (2) emailing each Defendant the same and including a link to the Court-specified website, adhering to Judge Scola's Order. [ECF No. 29].

Plaintiff effectuated service of process in the instant case because it complied with Judge Scola's Order authorizing alternative service of process over Defendants. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants had been "properly served . . .with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem,*

*Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

**ii. Amenability to Jurisdiction**

"The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants"

because they had been served in accordance with the "Court's order authorizing alternative service" and:

> [the] [d]efendants directly target[ed] their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Complaint alleges that,

> Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States**, including within the State of Florida and this District** through at least the Internet based ecommerce stores and fully interactive commercial Internet websites **accessible in Florida** and operating under the Seller IDs. Upon information and belief, Defendants infringe Plaintiff's trademarks and copyrights **in this District** by advertising, using, selling, promoting and distributing counterfeit trademark goods and unauthorized reproductions of Plaintiff's copyrighted works through such Internet based e-commerce stores and fully interactive commercial Internet websites. Also upon information and belief, Defendants are foreign residents purposefully availing themselves of the United States to perpetuate their unlawful activity, and Defendants have not consented to jurisdiction in another state, thus personal jurisdiction is also proper pursuant to Fed. R. Civ. P. 4(k)(2).

[ECF No. 1, ¶ 7 (emphasis added)].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[6] these established facts provide a basis for this Court's personal jurisdiction over the Defaulting Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[7]

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over the Defaulting Defendants.

---

6 *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

7 *See also*, *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this [c]ourt has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

**c. Liability**

As noted above, the Complaint alleges five counts: (Count I) trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114); (Count II) false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (Count III) common law unfair competition; (Count IV) common law trademark infringement; and (Count V) copyright infringement. [ECF No. 1].

**i. Count I**

Count I alleges trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act. "[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on this trademark infringement claim, Plaintiff must show: "(1) that [the] mark has priority and (2) that [ ] [D]efendant's mark is likely to cause consumer confusion." *Id.*

Plaintiff sufficiently alleged and established each of these elements: (1) Plaintiff's ownership of the Smiley Mark preceded the Defaulting Defendants' infringement; (2) the Defaulting Defendants are selling, offering for sale, and marketing products with the Smiley Mark without Plaintiff's consent or authorization; and (3) the mark used on the products the

Defaulting Defendants are selling, offering for sale, and marketing is similar enough to Plaintiff's Mark that it is likely to cause consumer confusion. [ECF No. 1, ¶¶ 25; 36–74]; [ECF No. 7-2, ¶¶ 10–14; 18]; [ECF No. 7-5, ¶ 6].

Count I also includes a claim for trademark counterfeiting. To prevail on this type of claim, "a plaintiff must [show] that: (1) the defendants counterfeited a registered mark and applied such counterfeit mark to labels, signs, or advertisements used in commerce and (2) such use is likely to cause confusion, mistake, or deception among the consuming public." *Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, 568 F. Supp. 3d 1307, 1314 (S.D. Fla. 2021) (citing 15 U.S.C. § 1114(1)(b); *Flip Face U.S.A., LLC v. Alexandria Moulding, Inc.*, No. 1:15-CV-883-MHC, 2017 WL 10928327, at *7 (N.D. Ga. Mar. 9, 2017)). "A counterfeit mark is 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Id*. (quoting *Bentley Motors Ltd. Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1312 (M.D. Fla. 2013)).

Plaintiff's Complaint sufficiently alleged and established both elements: (1) the Defaulting Defendants counterfeited Plaintiff's registered Mark and used it "in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale" of the Defaulting Defendants counterfeit goods.; and (2) that the use is "likely to cause and actually [has] caus[ed] confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality" of the Defaulting Defendants'

counterfeit goods. [ECF No. 1, ¶¶ 25; 52–55]; [ECF No. 7-2, ¶¶ 14–15; 20–22]; [ECF No. 7-5, ¶¶ 4–6]. Accordingly, Plaintiff is entitled to a default judgment as to both claims in Count I.

**ii. Count II**

Count II is a false designation of origin claim pursuant to § 43(a) of the Lanham Act. "The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement, whether the public is likely to be deceived or confused by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As already noted, Plaintiff's well-pled allegations establish its ownership of the Smiley Mark and there is a likelihood of consumer confusion due to the Defaulting Defendants' use of it. [ECF Nos. 1, ¶¶ 25; 36–74; 7-2, ¶¶ 10–14; 7-5, ¶ 6]. Thus, Plaintiff is entitled to a default judgment on this claim.

**iii. Counts III and IV**

The Complaint includes two common law causes of action for unfair competition (Count III) and trademark infringement (Count IV). "[T]he Florida common law trademark infringement and unfair competition analysis is essentially the same as the federal trademark infringement analysis." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *Marine v. Black Fin Yacht Corp.*, No. 8:15-CV-1210-T-27AEP, 2016 WL 5106948, at *5 (M.D. Fla. Sept. 20, 2016)). Because Plaintiff has shown that it is entitled to a default judgment in its favor on its federal trademark infringement claim (Count I), it is *also* entitled to a default judgment in its favor on these common law trademark infringement (Count IV) and unfair competition (Count III) claims.

**iv. Count V**

Plaintiff's final count alleges copyright infringement under the Copyright Act (17 U.S.C. §§ 106; 501). "A claim for copyright infringement consists of only two elements: 1) a plaintiff must show that the plaintiff owns a valid copyright; and 2) that the defendant has engaged in unauthorized copying." *Heralds of Gospel Foundation, Inc. v. Varela*, No. 17-cv-22281, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (*citing Roig v. Star Lofts on the Bay Condo. Ass'n, Inc.*, No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011)). "The copying must be so extensive that there is a substantial similarity between the defendant's

work and the protectible elements of the plaintiff's work." *Id*. (*citing Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-cv-22539, 2015 WL 427817, at *5 (S.D. Fla. Feb. 2, 2015)).

The Undersigned finds that Plaintiff sufficiently alleged and established both elements: (1) Plaintiff owns valid copyrights (the Copyrighted Works) and (2) the Defaulting Defendants have engaged in unauthorized copying. [ECF Nos. 1, ¶¶ 32; 75–83; 7-2, ¶¶ 10–14; 7-5, ¶¶ 4–6].

Here, the well-pled allegations in the Complaint, deemed admitted by virtue of the Defaulting Defendants' default,[8] establish the Defaulting Defendants' liability for each of the claims asserted. Moreover, Plaintiff's Motion repeatedly cites to the sworn declarations of Nicolas Loufrani, Plaintiff's Chief Executive Officer [ECF No. 7-2], and Richard Guerra, Plaintiff's legal counsel [ECF No. 7-5]. Both declarations help substantiate the Complaint's factual allegations.

Therefore, Plaintiff has shown that the Defaulting Defendants are liable for: trademark counterfeiting, trademark infringement and false designation of origin under the Lanham Act; trademark infringement and unfair competition under Florida common law; and copyright infringement under the Copyright Act.

---

8 *Perez*, 774 F.3d at 1339.

**d. Damages**

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed.1998)).

Here, Plaintiff seeks equitable relief and monetary (statutory) damages. As discussed below, Plaintiff is entitled to the relief requested.

**i. Injunctive Relief**

Plaintiff seeks the issuance of a permanent injunction. [ECF No. 82]. The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the

registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted). Moreover, injunctive relief is available "even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *4 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (internal citation omitted).

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weighs in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that the Defaulting Defendants are promoting, advertising, distributing, offering for sale, and/or selling goods "in interstate commerce [including this District] using **exact** copies and **confusingly similar** copies of the Smiley Marks and Copyrighted Works through at least the Internet based e-commerce

stores[.]" [ECF No. 1, ¶ 36 (emphasis added)]; *see also* [ECF No. 7-5, ¶ 5]. Therefore, consumers will continue to be confused by the Defaulting Defendants' unauthorized use of Plaintiff's intellectual property.

Additionally, so long as the Defaulting Defendants continue their infringing and counterfeiting activities, Plaintiff loses its ability to control its intellectual property and will continue to suffer irreparable harm to its reputation and goodwill.[9] *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon

---

[9] The Complaint states that the Defaulting Defendants' products are of a "quality substantially and materially different than that of Plaintiff's genuine goods." [ECF No. 1, ¶ 37]. It further alleges that,

> Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Smiley Marks and Copyrighted Works, and/or (iii) increasing Plaintiff's overall cost to market the Smiley Marks and Copyrighted Works, and educate consumers about their brand via the Internet.

*Id*. at ¶ 39.

the possibility of confusion." (citation omitted)).

Plaintiff has also shown no adequate remedy at law exists because monetary damages alone will not redress the harm to it from the Defaulting Defendants' infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiff's injury without an injunction outweighs the impact an injunction would have on the Defaulting Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin the Defaulting Defendants. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996));[10] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned **respectfully recommends** that the District Court enter permanent injunctive relief consistent with the terms listed in subsections (1) and (2) of Plaintiff's proposed final default judgment and permanent injunction [ECF No. 82-3, pp. 1–4].

**ii. Monetary (Statutory) Damages**

Plaintiff requests statutory damages under both the Lanham Act (15 U.S.C. § 1117(a)) and the Copyright Act (17 U.S.C. § 504(c)(1)). The Undersigned will address both requests separately.

---

[10] Although *Davidoff & CIE, S.A.* concerns the entry of a *preliminary* injunction and the instant motion seeks the issuance of a *permanent* injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

First, the Lanham Act provides multiple remedies for violations of trademark law. In addition to injunctive relief, discussed *supra*, the Lanham Act permits a successful plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
>> (1) **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>>
>> (2) **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

"The Court has wide discretion to determine the amount of statutory damages." *Animacord Ltd.*, 2022 WL 1109849, at *5 (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004)). The Court may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's

infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the trademark owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245, at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express*, 336 F. Supp. 2d at 1220–21)).

Here, Plaintiff seeks $30,000 in statutory damages against each Defaulting Defendant (totaling $10.32 million) based on their willful conduct. [ECF No. 82, p. 18]. "Plaintiff's suggested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(a) and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish [the Defaulting] Defendants, all stated goals of 15 U.S.C. § 1117(a)." *Id.* at 19.

The infringement in the instant case was willful:

> A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, 298 F. Supp. 2d at 1312 (S.D. Fla. 2003). Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019).

The Undersigned **respectfully recommends** that the District Court award Plaintiff the statutory damages amount of **$30,000.00** against each Defaulting Defendant; amounting to a total award of **$10,320,000.00** in relation to the Lanham Act violations (*i.e.*, Counts I and II).[11] This recommended statutory award will be sufficient to compensate Plaintiff, punish the Defaulting Defendants, and deter them and others from continuing to counterfeit or otherwise infringe on Plaintiff's trademark and copyright, consistent with the purpose of 15 U.S.C. § 1117(c). *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in statutory damages per defendant in willful infringement case).

Plaintiff seeks separate damages for the Defaulting Defendants violating the Copyright Act (Count V). [ECF No. 82, p. 19 (quoting 17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual

---

[11] "As to Counts III and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(a). Accordingly, judgment on Counts III and IV should be limited to the amount awarded pursuant to Counts I and II and entry of the requested equitable relief." [ECF No. 82, p. 19].

damages and profits, an award of statutory damages[.]") and citing *Arista Records*, 298 F. Supp. 2d at 1312)]. With respect to any one work, the Copyright Act permits a minimum award of $750 and a maximum award of $30,000. 17 U.S.C. § 504(c)(1). "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

As previously stated, a district court has broad discretion in determining statutory damages and may award them "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc.*, 2007 WL 3047143, at *1. Plaintiff requests an award of $25,000.00 against each of the 344 Defaulting Defendants (totaling $8,600,000.00) "to ensure that Defendants do not continue their intentional and willful counterfeiting of the Copyrighted Works. This award is within the permissible statutory range under 17 U.S.C. § 504(c) and is just." [ECF No. 82, p. 20]. The Undersigned agrees and **respectfully recommends** that the Court award Plaintiff both requested statutory damages. Each Defaulting Defendant should be charged **$55,000.00** ($25,000.00 for the copyright infringement claim and $30,000.00 for the Lanham Act claims) for the reasons stated above.

## IV. Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's Motion [ECF No. 82], award Plaintiff **$55,000.00** ($25,000.00 for the Copyright Act claim and $30,000.00 for the Lanham Act claims) in statutory damages against each of the 344 Defaulting Defendants **and issue a permanent injunction** against them.

Plaintiff must provide a copy of this Report and Recommendations to the Defaulting Defendants in the same manner in which the Court authorized alternative service of process on them. [ECF No. 18, p. 3]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Monday, February 26, 2024**.

## V. Objections

The parties will have seven (7)[12] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the

[12] The Undersigned is shortening the deadlines because each of the Defaulting Defendants have defaulted, and it therefore appears unlikely that they will respond in any way, including the filing of Objections.

interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on February 20, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record